PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANDY TOTH, ) | |
| ) | CASE NO. 5:16CV2101 |
| Plaintiff, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| ) | |
| GSF MORTGAGE CORPORATION, *et al.*, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | [Resolving ECF Nos. 50 and 51] |

Pending is Defendants' Motion for Summary Judgment (ECF No. 50). Also pending is Plaintiff's Motion for Partial Summary Judgment as to Counts IV, V, VI, and IX of the Complaint (ECF No. 51). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Court grants Defendants' motion in part, and denies Plaintiff's motion. Defendants' motion is granted as to Plaintiff's claims for (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count IX) – regarding attorney's fees for his FLSA wage claim before the Department of Labor ("DOL") only, and (2) intentional infliction of emotional distress (Count XII).[1]

---

[1] The Court announced its tentative decision during the Telephonic Final Pretrial Conference held on April 2, 2018.

(5:16CV2101)

## I. Stipulated Facts

The stipulated facts[2] are as follows:

1. Defendant GSF Mortgage Corporation ("GSF") is a full-service direct mortgage lender that offers service to customers in more than 32 states, nationwide. *See* https://info.gogsf.com/more-about-us.

2. On March 18, 2016, Plaintiff received a written offer of employment from GSF for a Branch Manager position. Offer of Employment (Plaintiff's Deposition Exhibit 1 (ECF No. 55-1)).

3. In connection with his employment, on March 23, 2016, Plaintiff signed GSF's Requirement of Hours for Full-Time Sales Employees. Plaintiff's Deposition Exhibit 5 (ECF No. 55-3); Deposition of Plaintiff (ECF No. 55-2) at PageID #: 696-97.

4. On March 23, 2016, Plaintiff signed an Employee Handbook Acknowledgment. Plaintiff's Deposition Exhibit 7 (ECF No. 55-4); ECF No. 55-2 at PageID #: 698-99.

5. Plaintiff commenced his employment with GSF on or about March 29, 2016. Answer (ECF No. 44).

---

[2] *See* Joint Stipulation of Facts (ECF No. 35). The parties also filed Defendants' Concise Statement of Undisputed Material Facts (ECF No. 54), that sets forth an additional 77 paragraphs, and Plaintiff's Statement of Facts (ECF No. 65), which is 10 pages long.

(5:16CV2101)

6. Plaintiff originated the NJ loan, which closed on June 6, 2016. Screenshot of Loans Originated by Plaintiff (Debbie Beier's Deposition Exhibit 49 (ECF No. 55-10);[3] Chart of Loans Originated by Plaintiff (Defendant Chad Jampedro's Deposition Exhibit 29 (ECF No. 55-11)).

7. Plaintiff originated the LZ loan, which closed on May 24, 2016. ECF Nos. 55-10 and 55-11.

8. Plaintiff originated the VE loan, which closed on June 20, 2016. ECF Nos. 55-10 and 55-11.

9. Plaintiff originated the CW loan, which closed on October 21, 2016. ECF Nos. 55-10 and 55-11.

10. On August 18, 2017, Plaintiff (through counsel) issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to the DOL relating to "[a]ny and all documents, notes, investigation files/records, pertaining to GSF Mortgage Corporation and Emil Kokolari initiated by Andy Toth or found through your own investigations of the above mentioned defendant(s)." Subpoena to DOL (Plaintiff's Deposition Exhibit 17 (ECF No. 55-24)).

11. On September 14, 2017, the DOL produced documents in response to that subpoena. Plaintiff's Deposition Exhibit 18 (ECF No. 55-23).

12. On June 9, 2016, GSF issued payment in the amount of $4,795.20 to Plaintiff. The $4,795.20 figure included payment of 160 hours of straight time paid at the Ohio minimum wage

---

[3] Ms. Beier is GSF's general manager.

3

(5:16CV2101)

rate of $8.10, totaling $1,296, and 288 hours of overtime compensated at a rate of time and a half, in the amount of $3,499.20. Jampedro's Deposition Exhibit 27 (ECF No. 55-26).

13. Plaintiff's earnings statement for the period ending June 31, 2016 reflected this $4,795.20 payment. ECF No. 55-26.

14. On August 18, 2017, Plaintiff (through counsel) issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to the Ohio Attorney General relating to "[a]ny and all documents, notes, investigation files/records, pertaining to GSF Mortgage Corporation and Emil Kokolari initiated by Andy Toth or found through your own investigations of the above mentioned defendant(s)." Subpoena to Ohio Attorney General (Plaintiff's Deposition Exhibit 14 (ECF No. 55-31)).

15. On September 13, 2017, the Ohio Attorney General produced documents in response to that subpoena. Plaintiff's Deposition Exhibit 15 (ECF No. 55-27)).

16. On August 18, 2017, Plaintiff (through counsel) issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to the Ohio Department of Commerce Division of Financial Institutions relating to "[a]ny and all documents, notes, investigation files/records, pertaining to GSF Mortgage Corporation and Emil Kokolari initiated by Andy Toth or found through your own investigations of the above mentioned defendant(s)." Subpoena to Ohio Department of Commerce Division of Financial Institutions (Plaintiff's Deposition Exhibit 19 (ECF No. 55-32)).

(5:16CV2101)

17. Plaintiff never received a response from the Ohio Department of Commerce Division of Financial Institutions to his subpoena for production of documents. ECF No. 55-2 at PageID #: 799-800.

18. On August 18, 2017, Plaintiff (through counsel) issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to the Consumer Financial Protection Bureau ("CFPB") relating to "[a]ny and all documents, notes, investigation files/records, pertaining to GSF Mortgage Corporation and Emil Kokolari found through your investigations of the above mentioned defendant(s)." Subpoena to the CFPB (Plaintiff's Deposition Exhibit 16 (ECF No. 55-37)).

19. Plaintiff never received a response from the CFBP to his subpoena for production of documents. ECF No. 55-2 at PageID #: 791-92.

20. Gretchen Bohr was an underwriter at GSF. ECF No. 55-2 at PageID #: 637; Deposition of Gretchen Bohr (ECF No. 55-38) at PageID #: 1519.

21. Plaintiff's 2016 federal and Ohio tax returns reflect gross wages in the amount of $162,997.

GSF initially threatened to terminate Plaintiff on May 19, 2016 during a conference call between Plaintiff, Beier, and Jampedro. On May 23, 2016, Jampedro, GSF's President, informed Toth during a conference call that GSF was going to terminate his employment. So, Plaintiff worked for GSF for about two months. During his deposition, Jampedro testified that one of the issues that led to Plaintiff's termination was the argument with his brother, Pete Toth, the same

5

(5:16CV2101)

incident for which he received no discipline at the time and instead got a raise thereafter. ECF No. 55-6 at 949, 954.

## II. Procedural History

Plaintiff filed the within lawsuit against Defendants on August 22, 2016. The Complaint (ECF No. 1) alleges: that Defendants violated the Ohio Whistleblower Statute, Ohio Rev. Code § 4113.52 (Count I); wrongful termination in violation of public policy (Count II); unlawful retaliation based on protected wage complaints (Count III); breach of contract (Count IV); promissory estoppel (Count V); unjust enrichment (Count VI); failure to pay commissions under both Ohio (Count VII) and Wisconsin law (Count VIII); that Defendants violated the FLSA (Count IX), the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.02 (Count X), and Wisconsin law (Count XI); intentional infliction of emotional distress (Count XII); and post-employment retaliation (Count XIII).[4]

## III. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the

---

[4] On December 4, 2017, the parties filed a Stipulated Dismissal of Counts VII, VIII, X, and XI of the Complaint (ECF No. 48). It was approved on April 2, 2018. *See* Stipulation and Order (ECF No. 76).

(5:16CV2101)

pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the

(5:16CV2101)

non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party. *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

### IV. Analysis

**A. Ohio Whistleblower Statute, Ohio Rev. Code § 4113.52 (Count I)**

Defendants contend they terminated Plaintiff's employment because he repeatedly failed to follow management's directives. They also note Plaintiff did not make any reports or complaints of any alleged mortgage fraud to Defendants or the CFPB until *after* he was notified of Defendants' decision to terminate his employment.

As to Counts I and II, Plaintiff argues the Court should deny summary judgment because genuine issues of material fact remain whether Toth was terminated, in part, because he complained to GSF about illegal conduct by his branch assistant, Emil Kokolari, who was acting as a loan officer without a license. According to Plaintiff, he complained about this activity before his termination, *see* Email to Beier (ECF No. 64-17) at PageID #: 1737-38; and following his termination, Kokolari and GSF were investigated by the Ohio Attorney General's Office. In October 2017, it was determined that Kokolari engaged in loan officer conduct without a license.

8

(5:16CV2101)

*See* Settlement Agreement between the Ohio Department of Commerce and GSF (ECF No. 64-14). According to Plaintiff, the evidence creates a genuine issue of material fact that Toth's complaints, at least in part, proximately caused his termination.[5] The Court agrees.

### B. Wrongful Termination in Violation of Public Policy (Count II)

Defendants state again that they terminated Plaintiff's employment because he repeatedly failed to follow management's directives. They also note Plaintiff did not make any reports or complaints of failure to pay wages to Defendants or the DOL until *after* he was notified of Defendants' decision to terminate his employment.

Plaintiff argues to the contrary that "[i]n early May, 2016, [he] began complaining about not being paid minimum and overtime wages [he] had earned, wages [he] was entitled to because [he] had not yet received any commissions which would offset those minimum wages in any way." Affidavit of Plaintiff (ECF No. 63-1) at PageID #: 1680, ¶ 17. Plaintiff contends he has set forth evidence establishing that his complaints, even if not protected by Ohio Rev. Code § 4113.52, are protected by Ohio public policy.

To support a claim for discharge in violation of public policy, a plaintiff must demonstrate (1) the existence of a clear public policy sufficient to justify an exception to the employment-at-will doctrine that is manifested in a state or federal constitution, statute, administrative regulation, or common law; (2) that the dismissal of employees under

---

[5] On November 3, 2017, Magistrate Judge George J. Limbert entered an Order (ECF No. 43) resolving the parties' discovery dispute regarding documents from Mr. Kokolari's personnel file.

9

(5:16CV2101)

circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) that the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) that the employer lacked overriding legitimate business justification for the dismissal. *Zajc v. Hycomp, Inc.*, 172 Ohio App.3d 117, 122 (Ohio App. 8th Dist. May 31, 2007); *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70 (1995); *Painter v. Graley*, 70 Ohio St.3d 377 (1994). The first two elements of the tort of wrongful discharge , the clarity and jeopardy elements, "are questions of law to be determined by the court." *Collins*, 73 Ohio St.3d at 70. The causation and overriding justification elements are questions of fact for the jury. *Id.* The Court concludes that Plaintiff has presented evidence creating a genuine issue of material fact whether his termination was causally related to his complaints about violations of the Ohio Mortgage Broker's Act, Ohio Rev. Code § 1322.01 *et seq.* and/or the FLSA, and whether GSF had an "overriding justification" for Plaintiff's termination.

### C. Unlawful Retaliation based on protected wage complaints (Count III)

Regarding Plaintiff's FLSA retaliation claim, Defendants state again that they terminated Plaintiff's employment because he repeatedly failed to follow management's directives. They also note Plaintiff did not make any reports or complaints of failure to pay wages to Defendants or the DOL until *after* he was notified of Defendants' decision to terminate his employment.

To prevail on a retaliation claim under the FLSA, 29 U.S.C. § 215, Plaintiff must establish a prima facie case by showing that: (1) he engaged in protected activity; (2) GSF knew of that activity; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse employment action. *Nicklas v.*

10

(5:16CV2101)

*United Parcel Service, Inc.*, No. 1:07 CV 73, 2007 WL 4322220, at *6 (N.D. Ohio Dec. 7, 2007) (Nugent, J.) (citing *Adair v. Charter County of Wayne*, 452 F.3d 482 (6th Cir. 2006)). The Court concludes that a genuine issue of material fact remains regarding the causal relationship between Plaintiff's complaints about not being compensated his earned minimum and overtime wages and termination.

### D. Breach of Contract (Count IV); Promissory Estoppel (Count V); and, Unjust Enrichment (Count VI)

Counts IV, V and VI of the Complaint (ECF No. 1) relate to the alleged unpaid commissions owed to Plaintiff by Defendants. According to Plaintiff, there are no genuine issues of material fact regarding at least some of the loans originated by him during his employment and whether those loans have closed and funded.

Defendants argue Plaintiff's commissions were calculated and paid pursuant to the terms of his Offer Letter (ECF No. 53-3) and Compensation Addendum (ECF No 53-1), which provide that Plaintiff did not receive any additional commission payments unless his earned commissions exceeded his recoverable draw. According to Defendants, Plaintiff's earned commissions did not exceed his recoverable draw, *i.e.*, $20,000. Therefore, he was paid for all earned commissions. Regarding Count V, Defendants contend Plaintiff did not leave his prior employment to join GSF based on representations Defendants made. As to Count VI, Defendants state Plaintiff cannot show that equity and good conscious require them to make any additional commission payments to him.

In moving for partial summary judgment on these claims, Plaintiff argues to the contrary that the $20,000 he received was an up front payment from GSF that was part of his original

(5:16CV2101)

offer of employment. *See* ECF No. 53-3. According to Plaintiff, it is a "guarantee" or signing bonus. GSF actually ended up paying Plaintiff $30,000 instead of $20,000. *See* Plaintiff's Deposition Exhibit 13 (ECF No. 55-13). According to Plaintiff, no one at GSF ever asked him to return any portion of the extra $10,000, and in fact, Toth was told to keep it due to the delays in getting his branch up and running and the approval of his licenses he needed to originate loans in certain states. Defendants contend the $10,000 is a windfall. Plaintiff was paid an additional $10,000 in error and he has never repaid that money. *See* ECF No. 55-2 at PageID #: 771.

No less than four loans, which were originated by Plaintiff during his employment, have since closed and funded. According to GSF's own documentation, those loans include:

| Borrower | Alleged Owed Commission |
| --- | --- |
| NJ | $4,345.99 |
| LZ | $1,200 |
| YE | $5,723.43 |
| CW | $2,921.25 |

Plaintiff argues he is owed $14,190.67. The Court concludes whether Plaintiff is owed additional commission payments is an issue for the jury to decide.

### E. Violation of the FLSA (Count IX)

Count IX relates to Defendants' alleged failure to pay Plaintiff his earned minimum and overtime wages under the FLSA.

Regarding Plaintiff's FLSA liquidated damages and attorneys' fees claim, Defendants argue Plaintiff cannot establish liability of his underlying wage claim. According to Defendants,

12

(5:16CV2101)

they also have a good faith defense to Plaintiff's minimum wage claim. Defendants contend, as part of a settlement facilitated by the DOL, they paid Plaintiff for wages he claimed (post-termination) that he was owed for hours he failed to record during his employment. Moreover, Defendants believed their action was not violating the FLSA. Although Plaintiff requests attorney's fees,[6] he has no attorney's fees to recover because no attorney assisted him with his FLSA wage claim before the DOL.

Plaintiff moves for partial summary judgment on this claim. He argues it is undisputed that Defendants untimely paid him his earned minimum wages after he complained to the DOL regarding those wages; and, therefore, as a matter of law, Plaintiff is entitled to the full allotment of damages provided for under the FLSA, including liquidated damages. After the DOL investigation was closed, GSF issued a one-time check to Plaintiff for the gross amount of $4,795.20 for his unpaid minimum wages and overtime. Plaintiff never had to sign any type of "settlement" document or otherwise agree to waive any rights in exchange for this check. ECF No. 63-1 at PageID #: 1682, ¶ 34.

Defendants respond that Plaintiff has not established liability as to the underlying FLSA claims. Contrary to Plaintiff's contention, GSF's business decision to settle his DOL complaint is insufficient to establish a violation of the FLSA. A settlement in itself – entered into purely for business reasons – cannot amount to an admission of liability. *See Fidelholtz v. Peller*, 81 Ohio St.3d 197, 201 (1998) (noting that "[a] settlement is not tantamount to an admission of liability" and that "[d]efendants settle for many reasons, such as the avoidance of

---

[6] Complaint (ECF No. 1) at PageID #: 13, ¶ 128.

13

(5:16CV2101)

bad publicity and litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships"). In any event, Defendants maintain they have established a good faith defense to the claim. Despite moving for summary judgment on this claim, Defendants argue in opposition to Plaintiff's motion that there is a dispute of material fact regarding the amount of back wages that GSF could owe Toth, if any. ECF No. 66 at PageID #: 1842.

Defendants' motion is granted as to Plaintiff's claim for violation of the FLSA – regarding attorney's fees for his FLSA wage claim before the DOL only.

### F. Intentional Infliction of Emotional Distress ("IIED") (Count XII)

To establish a claim for IIED under Ohio law, a plaintiff must prove facts showing that (1) the defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff was serious. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (1991)).

According to Defendants, there is no evidence that: (1) could enable a juror to reasonably conclude that Defendants' conduct in terminating Plaintiff's employment was so extreme and outrageous that it should not be tolerated in a civilized society; and (2) Defendants' conduct in terminating Plaintiff's employment caused Plaintiff to sustain any physical injury or harm.

14

(5:16CV2101)

Plaintiff testified as follows at his deposition:

> Q. What evidence do you have to support your claim for emotional distress?
> A. Lost our vehicles. Had to face my kids and tell them on nights that, "I know you're hungry, and thanks for" -- "thanks for telling mom and dad that you still love them and that's the most important thing." And watching your kids hungry in front of you and you can't run to the gas station because you don't have a car, you don't have gas. Totally taken advantage of here. Lost everything that I had. Had to go on welfare. My kids couldn't play their sports. I ruined 15 or 20 of the banks that are going to be forever in my future completely ruined because they'd end up telling me no at the very end because I'm sure they have some kind -- something to do with your client. Because I had never not got a job, so it affects me and my livelihood for the rest of my life in the future for anyone that I applied for a loan -- a job for and didn't get it. I don't know, I think, I'm sure I can keep going and going and going, but --

ECF No. 55-2 at PageID #: 861-62. Defendants note, however, that Plaintiff had a gross income of $162,997 in 2016. ECF No. 52 at PageID #: 467, ¶ 21. Moreover, the pay stubs Plaintiff received from GSF show $31,296 in wages that he received for the two months he worked for Defendant. ECF No. 55-13 ($10,000 gross pay for 03/01/2016 – 03/15/2016 pay period; $10,000 gross pay for 03/16/2016 – 03/31/2016 pay period; $10,000 gross pay for 04/01/2016 – 04/15/2016 pay period; $648 gross pay for 04/16/2016 – 04/30/2016 pay period; $648 for 05/01/2016 – 05/15/2016 pay period).

The Court finds that Defendants' conduct did not rise to the level of being so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 503 (6th Cir. 2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 375 (1983)). No reasonable jury could find Defendants' conduct "extreme and outrageous." *See Jackson v. City of Wooster Bd. of Educ.*, 29 Ohio

15

(5:16CV2101)

App.3d 210, 211-12 (1985). Therefore, summary judgment for Defendant on this claim is appropriate.

### G. Post-employment Retaliation (Count XIII)

"The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Wolf v. McCullough-Hyde Memorial Hosp., Inc.*, 67 Ohio App.3d, 349, 355 (1990); *see also Moore v. Rubin*, No. 2001-T-0150, 2004 WL 2803237, at *3, ¶ 16 (Ohio App. 11th Dist. Sept. 17, 2004); *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 588, ¶ 57 (2004).

Defendants contend there is no evidence that Defendants or anyone acting on their behalf made any disparaging statements about Plaintiff to his subsequent employer, FFC Mortgage ("FFC"). Aside from Plaintiff's own subjective belief, Defendants argue there is no evidence that FFC terminated his employment because of any such alleged statements.

Plaintiff was hired by FFC on July 1, 2016 as a branch manager and loan officer. A few weeks later, on or around July 18, 2016, Gretchen Bohr, who was a former co-worker of Plaintiff's at GSF, interviewed for a position with FFC during which she allegedly disparaged Plaintiff. Bohr was still employed with GSF as an underwriter at the time she interviewed with FFC. ECF No. 55-38 at PageID #: 1519. According to Plaintiff, Bohr lied under oath at her deposition and said she was not still employed at GSF at the time of her interview. ECF No. 63 at PageID #: 1676. At her deposition, Bohr also testified, under oath, that she had no idea that

16

(5:16CV2101)

Plaintiff was employed with FFC and rather only "knew he was looking for a job." ECF No. 55-38 at PageID #: 1554. Plaintiff maintains this was also a lie because on July 8, 2016, Toth had a lengthy text conversation with Bohr wherein he told her about his new job at FFC. ECF No. 63 at PageID #: 1676; ECF No. 64-16. Plaintiff attests that Bohr saw him at FFC on the day of her interview. ECF No. 63-1 at PageID #: 1683, ¶ 41. Within less than a week after Bohr's interview, FCC terminated Plaintiff's employment. Accordingly, summary judgment on this claim is inappropriate.

## V. Conclusion

Defendants' Motion for Summary Judgment (ECF No. 50) is granted in part. Defendants' motion is granted as to Plaintiff's claims for (1) violation of the FLSA (Count IX) – regarding attorney's fees for his FLSA wage claim before the DOL only, and (2) intentional infliction of emotional distress (Count XII).

Plaintiff's Motion for Partial Summary Judgment as to Counts IV, V, VI, and IX of the Complaint (ECF No. 51) is denied.

IT IS SO ORDERED.

| May 10, 2018 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |